16495

JENKINS v. LIVINGSTON *ET AL.*
(64 S. E. (2d) 888)

*Messrs. T. C. Callison, Attorney General,* and *Claude K. Wingate, Assistant Attorney General,* of Columbia, *for Appellants.*

*Mr. Edwin W. Johnson,* of Spartanburg, *for Respondent,*

April 27, 1951.

BAKER, Chief Justice.

The appellants in their printed brief allege: "The only issue to be determined by the Court is whether or not where respondent's records were not complete and accurate, appellants could upon the best information and belief assess the income tax which may be found (and we interpolate, by the Tax Commission) to be due."

In the Court below, it was the contention of the Tax Commission that the taxpayer (respondent) did not report sufficient gross income for the years 1946, 1947 and 1948. It then proceeded to determine his income by a method it says it had "statutory authority" to use. It was the position of the respondent that the Tax Commission did not have the "statutory authority" to resort to the method used; but if it did, the conclusion arrived at by the Commission was factually wrong. In other words, if it be conceded that the method used by the Tax Commission was permissible, yet under the facts of this case as disclosed by the record, the respondent has refuted the claim of the Tax Commission as to his income, and that he had made inaccurate returns for the years involved.

The taxpayer respondent, has been, since some time in 1945, the owner of a retail liquor store in the town of Chesnee. He is not an educated man, but his method of bookkeeping, while simple, was adequate and, if accurately kept, would have reflected his gross income. His income

tax returns were in accord with his records, and prepared by a public accountant.

Apparently this whole matter stems from the fact that the respondent had deposited more money in a local depository than his daily sales showed; and that he had no other source of income. Ordinarily, this fact, unexplained, would create a suspicion that the taxpayer had not made a true and correct report of his gross sales or gross income, but it is not conclusive and the presumption created is not irrebuttable. Therefore, when the Tax Commission assessed an additional tax, with interest, against the respondent for the three years hereinabove stated, he paid the tax so assessed under protest, and brought an action under Section 2469 of the Code to recover same.

When the agent or auditor of the Tax Commission was checking the daily sales of the respondent, he found that they were accurately reported as gross income on the tax returns of the respondent taxpayer. The Tax Commission had in its possession a duplicate of all invoices for liquor sold to the respondent. The law permitted a retail liquor store dealer to charge a profit of 25%, but there was nothing in the statute which compelled such dealer to charge and collect such percentage profit. It appears from the record (and was a fact generally known, at least by hearsay) that throughout 1946, 1947 and the greater part of 1948, there were a great many offbrands of liquor, rum, cordials, or "what have you" on the market and that in order to procure any well known and advertised brands of liquor, it was necessary, as a practical matter, for a dealer to purchase a considerable quantity of this off-brand concoction; and that it could seldom be sold at any material profit, and sometimes had to be sold for less than it cost. This should have been taken into consideration by the Tax Commission in arriving at the probable income of a retail liquor dealer. We are assuming of course that the Tax Commission was as well informed thereabout as the general public. Moreover, the business of a retail liquor

dealer, especially in Chesnee, was a highly competitive business.

An explanation of excess deposits was forthcoming at the first time the respondent taxpayer was confronted with the fact that excess deposits in a local depository was the basis of the claim of the Tax Commission. The excess deposits represented "duplicate" deposits by reason of the respondent assisting people in getting checks cashed by the depository in Chesnee by giving them his check or cashing his check and giving them the cash in exchange for the check which they held and were unable to get the depository to cash until it had been collected by the depository, and then at a considerable commission or fee. It satisfactorily appears that such "duplicate deposits" fully accounted for the excess of deposits over the total daily sales of liquor sold from the store.

In the light of the factual situation of this case, we do not find it necessary to discuss whether the Tax Commission could resort to the method it used in undertaking to determine if an additional tax was due by the respondent, and therefore refrain from passing thereon.

The judgment appealed from is affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.